1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Paul S. Grewal, Magistrate Judge

4

5  ADAPTIX, INC.,                    )
                                     )
6          Plaintiff,                )
                                     )
7  vs.                               )    No. C 13-01774-PSG
                                     )
8  CELLCO PARTNERSHIP d/b/a          )
   Verizon Wireless,                 )
9                                    )
           Defendant.                )
10 _____ )
   ADAPTIX, INC.,                    )
11                                   )
           Plaintiff,                )
12                                   )
   vs.                               )    No. C 13-01776-PSG
13                                   )       C 13-01777-PSG
   APPLE, INC., et al.,              )       C 13-02023-PSG
14                                   )
           Defendants.               )
15 _____ )
   ADAPTIX, INC.                     )
16                                   )
           Plaintiff,                )
17                                   )
   vs.                               )    No. C 13-01778-PSG
18                                   )
   AT&T, INC., et al.,               )
19                                   )
           Defendants.               )
20 _____ )
   ADAPTIX, INC.                     )
21                                   )
           Plaintiff,                )
22                                   )
   vs.                               )    No. C 13-01844-PSG
23                                   )
   CELLCO PARTNERSHIP, et al.,       )
24                                   )
           Defendants.               )
25 _____ )

2

1   ADAPTIX, INC.                    )
                                     )
2             Plaintiff,             )
                                     )
3   vs.                             )    No. C 14-01259-PSG
                                     )
4   DELL, INC., et al.,              )
                                     )
5             Defendants.            )
    _____)
6   ADAPTIX, INC.                    )
                                     )
7             Plaintiff,             )
                                     )
8   vs.                             )    No. C 14-01379-PSG
                                     )
9   AMAZON. COM, INC., et al.,       )
                                     )
10            Defendants.            )
    _____)
11  ADAPTIX, INC.                    )
                                     )
12            Plaintiff,             )
                                     )    No. C 14-01380-PSG
13  vs.                             )       C 14-01386-PSG
                                     )       C 14-01387-PSG
14  RESEARCH IN MOTION LIMITED,      )
       et al.,                       )
15                                   )
              Defendants.            )
16  _____)
    ADAPTIX, INC.                    )
17                                   )
              Plaintiff,             )
18                                   )
    vs.                             )    No. C 14-01385-PSG
19                                   )
    SONY MOBILE COMMUNICATIONS,      )
20     INC., et al.,                 )
                                     )
21            Defendants.            )
22  _____)

                                 San Jose, California
23                               Friday, May 16, 2014

24  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                             RECORDING
25

3

1  <u>APPEARANCES</u>:

2  For Adaptix:

3                              Hayes Messina Gilman & Hayes
                             200 State Street
                             6th Floor
4                              Boston, Massachusetts 02109
                         BY:  MICHAEL J. ERCOLINI, ESQ.
5
                             Banys, P.C.
6                              1032 Elwell Court, Suite 100
                             Palo Alto, California 94303
7                         BY:  JENNIFER L. GILBERT, ESQ.

8  For Verizon Wireless:

9                              Wilmer Cutler Pickering Hale
                              & Dorr LLP
                             950 Page Mill Road
10                             Palo Alto, California 94304
                         BY:  MARK DONNELL FLANAGAN, ESQ.
11                        BY:  GEOFFREY MARK GODFREY, ESQ.

12  For Apple, INC.:

13                             Wilmer Cutler Pickering Hale
                              & Dorr LLP
                             950 Page Mill Road
14                             Palo Alto, California 94304
                         BY:  MARK D. SELWYN, ESQ.
15                        BY:  CRAIG DAVIS, ESQ.

16                             Wilmer Cutler Pickering Hale
                              & Dorr
17                             1875 Pennsylvania Avenue, NW
                             Washington, DC 20006
18                        BY:  JONATHAN L. HARDT, ESQ.

19  For Dell, Inc.:

20                             Winston & Strawn
                             101 California Street
                             San Francisco, California
21                              94111
                         BY:  DAVID S. BLOCH, ESQ.
22

23
                    (APPEARANCES CONTINUED NEXT PAGE)
24

25

4

1 APPEARANCES:  (Cont'd.)

2 For AT&T Mobility and
    Sony Mobile                    Thompson & Knight
3   Communications:                50 California Street
                                   Suite 3325
4                                  San Francisco, California
                                     94111
5                          BY:    AMELIA D. WINCHESTER, ESQ.

6 For Blackberry:
                                   Baker Botts
7                                  2001 Ross Avenue
                                   Dallas, Texas 75201
8                          BY:    KURT PANKRATZ, ESQ.

9 For T Mobile:
                                   Baker Botts
10                                 1001 Page Mill Road
                                   Building One, Suite 200
11                                 Palo Alto, California 94304
                           BY:    JON SWENSON, ESQ.
12
                                   Baker Botts
13                                 2001 Ross Avenue
                                   Dallas, Texas 75201
14                         BY:    DOUGLAS M. KUBEHL, ESQ.

15 For Amazon.com, Inc.:
                                   Klarquist Sparkman, LLP
16                                 One World Trade Center
                                   1212 Southwest Salmon Street
17                                 Suite 1600
                                   Portland, Oregon 97204
18                         BY:    ROBERT T. CRUZEN, ESQ.

19 For HTC and AT&T:
                           BY:    FRED WILLIAMS, ESQ.
20
    For AT&T Mobility:
21                         BY:    TRAVIS JENSEN, ESQ.

22                         BY:    CHRISTOPHER HUGHES, ESQ.

23                                 Transcribed by:
                                   Echo Reporting, Inc.
24                                 Contracted Court Reporter/
                                   Transcriber
25                                 echoreporting@yahoo.com

*Echo Reporting, Inc.*

5

1 <u>Friday, May 16, 2014</u>                           <u>10:00 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  Calling Adaptix, Inc. Versus Cellco

5  Partnership, doing business as Verizon Wireless, case number

6  CV13-1774-PSG, and related cases.  Matter on for case

7  management conference.

8      Counsel, please state your appearances.

9          THE COURT:  Who wants to start?

10         MR. FLANAGAN:  I'll do this part, your Honor.

11  Good morning, Mark Flanagan and Geoff Godfrey on behalf of

12  Verizon Wireless.

13         THE COURT:  Good morning.

14         MR. SELWYN:  Good morning, your Honor.  On behalf

15  of Apple, Mark Selwyn and Craig Davis, and with us in the

16  court is Sarita Venkat of Apple.

17         THE COURT:  Good morning.

18      Don't be shy.  We have a lot to get through.

19         MR. BLOCH:  Good morning, your Honor.  David

20  Bloch, Winston and Strawn, for Dell.

21         THE COURT:  Good morning.

22         MR. BLOCH:  Morning.

23         MS. WINCHESTER:  Good morning, your Honor.  Amelia

24  Winchester from Thompson and Knight, on behalf of AT&T

25  Mobility and Sony Mobile Communications.

1          THE COURT:  Good morning to you as well.

2          MR. PANKRATZ:  Good morning, your Honor.  Kurt

3   Pankratz with Baker Botts, on behalf of Blackberry.  And

4   then the Blackberry case is also on behalf of AT&T.

5          THE COURT:  Good morning.

6          MR. SWENSON:  Good morning, your Honor.  Jon

7   Swenson from Baker Botts, on behalf of T Mobile.  And also

8   with me, I think on the phone, is Doug Kubehl on behalf of T

9   Mobile, as well.

10          THE COURT:  Good morning.

11          MR. KUBEHL (Telephonic):  Good morning, your

12   Honor.

13          MR. ERCOLINI:  Good morning, your Honor.  Mike

14   Ercolini on behalf of Adaptix.

15          THE COURT:  Mr. Ercolini, good morning.

16          MS. GILBERT:  Good morning, your Honor.  Jennifer

17   Gilbert on behalf of Adaptix.

18          THE COURT:  Good morning.

19          MR. CRUZEN:  Good morning, your Honor.  Rob Cruzen

20   on behalf of Amazon.com, Inc.

21          THE COURT:  Good morning.

22          MR. WILLIAMS:  Good morning, your Honor.  Fred

23   Williams for HTC and AT&T.

24          THE COURT:  Mr. Williams, good morning, to you as

25   well.

7

1        MR. JENSEN:  Good morning.  Travis Jensen on

2 behalf of AT&T Mobility.

3        THE COURT:  Good morning, Mr. Jensen.

4    Anyone else here in the courtroom that needs to state

5 their appearance?  Does anyone on the phone wish to state

6 their appearance who has not already been identified?

7        MR. HARDT (Telephonic):  Good morning, your Honor.

8 This is Jonathan Hardt --

9        MR. HUGHES (Telephonic):  Yes, your Honor.

10 Christopher Hughes for AT&T Mobility in the 1777 and 2023

11 cases.  And thank you for accommodating me.

12        THE COURT:  Happy to do it.

13    Who else is on the phone?

14        MR. HARDT:  Good morning, your Honor.  This is

15 Jonathan Hardt of Wilmer Hale, also on behalf of Apple.

16        THE COURT:  Good morning, sir.

17    Anyone else on the telephone?  If not, why don't we get

18 started.  Have a seat, at least try to have a seat if you

19 can.

20    I have received and reviewed the joint case management

21 conference statement and I appreciate the information.  I

22 particularly appreciate the pithy succinct presentation in

23 the information.  Let me begin, if I could, just by asking a

24 few questions about how we're going to get arms around a few

25 things.

1    First and foremost, I'm just working my way through the

2 list of highlighted issues I have from that statement, my

3 understanding is that Adaptix plans to file a motion for

4 leave to amend its infringement contentions; Mr. Ercolini,

5 is that correct?

6         MR. ERCOLINI:  Yes, your Honor, that is correct.

7         THE COURT:  And when -- when should I expect that

8 motion to be on file?

9         MR. ERCOLINI:  That should be on file today.

10 We're still word from AT&T as to whether or not they'll

11 oppose it, but we have an agreement with HTC -- HTC, Apple

12 and Verizon that they are not going to oppose the motion.

13        THE COURT:  Mr. Williams, do you want to speak to

14 this?

15        MR. WILLIAMS:  Your Honor, I have a call with AT&T

16 shortly after the hearing and I hope it will not be opposed.

17        THE COURT:  Okay.  Certainly I would appreciate it

18 if you could let me know if that's the case, so I can take

19 at least one piece of paper off of my desk.

20    Next, my understanding is that there is some dispute

21 regarding a stipulation that was entered back in March

22 regarding discovery.  This is, I guess, an Apple, Verizon

23 and Adaptix issue, in particular; Mr. Godfrey, do you want

24 to speak to this and then I'll hear from Mr. Ercolini as

25 well?

9

1          MR. GODFREY:  Good morning, your Honor.

2          THE COURT:  Good morning.

3          MR. GODFREY:  So on March 26th, to resolve a

4  pending motion to compel that was brought by Apple and

5  Verizon, Adaptix agreed to produce certain materials from

6  related Adaptix proceedings, including among other things,

7  deposition transcripts, witness statements, declarations and

8  exhibits.  And the details of that are set forth in the

9  stipulation that has been filed with the Court.

10     In reviewing the materials that were produced, pursuant

11  to that stipulation, it appears to Verizon and Apple that

12  Adaptix is redacting testimony relying on confidentiality

13  agreements between it and its licensees of the patents in

14  suit to shield discovery of deposition testimony from its

15  own witnesses back in 30(b)6.

16          THE COURT:  So if I can stop you there, Mr.

17  Godfrey, what you have -- at least in some transcripts, for

18  example -- are statements, testimony from Adaptix witnesses,

19  that have been redacted by Adaptix because presumably they

20  identify or trigger some confidentiality concerns of a

21  licensee?  Is that right?

22          MR. GODFREY:  It appears to be, your Honor.  So,

23  for example, in the transcript of Mr. Dodd's deposition,

24  he's an Adaptix corporate representative, there are

25  approximately 100 pages containing redactions, and it

1  appears to us, based on the index of exhibits and the index

2  at the end, which is also selectively redacted, that some of

3  that testimony concerns licensing in enforcement of the

4  patents in suit.  Same for the transcript of Mr. Vella, who

5  is set to be deposed in the earlier transferred cases here

6  this afternoon.

7           THE COURT:  Okay, go on.  I interrupted you.

8           MR. GODFREY:  So Adaptix, in our view, should not

9  be permitted to rely on confidentiality agreements with its

10 licensees in order to shield from discovery testimony of its

11 own witnesses concerning, particularly, licensing and

12 enforcement of the patents in suit.  And so we request that

13 Adaptix be ordered to produce in unredacted form, on an

14 outside counsel only basis, copies of this prior testimony.

15          THE COURT:  Can I ask you, Mr. Godfrey, you

16 mentioned this is testimony regarding Adaptix licensees,

17 have the underlying licenses themselves been produced,

18 pursuant to the protective order?

19          MR. GODFREY:  They have, your Honor.

20          THE COURT:  So you have those?

21          MR. GODFREY:  Yes.

22          THE COURT:  Okay.  All right.

23     Mr. Ercolini, do you want to speak to these issues?

24          MR. ERCOLINI:  Absolutely, your Honor.  So, your

25 Honor, respectfully -- or with respect to -- all due respect

1  to Mr. Godfrey, he's not correct as to the basis for the

2  redactions.  The documents are redacted because they are

3  subject to a protective order in the ITC.  Apple knows the

4  situation very well because it has been in -- placed in

5  exactly the same situation previously.  So the documents

6  that Verizon and Apple have right now are unredacted to --

7  as to every single major party in that action, Samsung,

8  Ericsson, Microsoft and Nokia.  And those are really the

9  only parties that they're concerned with.

10      Adaptix, pursuant to the stipulation that the parties

11  filed, has sought consent from every single party who was --

12  whose confidential business information was contained in

13  those documents.  We have received consent from all but, I

14  think, three.

15          THE COURT:  So if I could stop you there, Mr.

16  Ercolini.

17          MR. ERCOLINI:  Sure.

18          THE COURT:  What you're telling me is that in this

19  ITC proceeding, the other parties to that proceeding have

20  either consented, or information has been produced about

21  those four parties without any issue.  We're talking about

22  third parties to the ITC proceeding; is that correct?

23          MR. ERCOLINI:  That's correct.

24          THE COURT:  Okay.  Go ahead.

25          MR. ERCOLINI:  So right now the way it stands is

12

1  that Microsoft and Samsung have both given blanket consent

2  for all -- for disclosure of all confidential materials

3  produced in the ITC.  So that means that the documents have

4  been unredacted.  We've actually gone through several rounds

5  of redactions, based on the consents we've been able to

6  achieve.  But right now they're unredacted in their entirety

7  for Microsoft and Samsung.  Nokia has not given blanket

8  consent, so there is still the issue of Nokia's confidential

9  business information, but it's not a large amount.  Really

10  the most confidential business information is that of

11  Ericsson, it's that of Samsung and it's that of Microsoft.

12  And Verizon and Apple both have that.

13      The other parties --

14          THE COURT:  Has Ericsson raised any issue?

15          MR. ERCOLINI:  Ericsson has actually provided

16  consent for Verizon to view the material, but not for Apple.

17  So we've actually done two rounds of redactions for that.

18  We've actually gone through the same procedure with AT&T and

19  HTC in order to produce these documents to them.  So we've

20  done an enormous amount of work in order to comply with the

21  stipulation.  We've complied with every aspect of it, and

22  we've actually gone above and beyond, because we've produced

23  several rounds of redactions based on the consents we were

24  able to achieve beyond the deadlines of that stipulation.

25          THE COURT:  So how would you propose to get past

13

1  this hurdle?  It seems to me that under the terms of the

2  stipulation, the parties have some obligation -- you have an

3  obligation here to try to work through all of this.  What is

4  your proposal to work through it?

5          MR. ERCOLINI:  My proposal is very simple.  My

6  proposal is that Verizon and Apple look at the documents

7  that have been provided to them, because the documents

8  reflect every consent that we've been able to obtain and --

9          THE COURT:  Right, but their beef if it's the

10  stuff that you haven't been able to get consent for that

11  they want to look at.  So how are we going to get to Nokia,

12  how are we going to clear any of the other third parties

13  that have not provided full consent yet?  Because what I

14  don't want is a situation where because some third party

15  either -- through no fault of yours, maybe they're just

16  jerking you around, maybe they're just not interest in

17  helping out Apple, in this particular event -- but I don't

18  want some third party delay to interfere with the production

19  schedule in this case.  So how would you work through that?

20          MR. ERCOLINI:  I'm not entirely sure what the

21  protocol is at this point.  I think that when this situation

22  came up with Apple and Samsung that Apple was -- sought

23  permission from the ITC to disclose it in the district court

24  cases.  I think that's probably the best we can do.

25          THE COURT:  Under the terms of the ITC protective

14

1   order, if this Court were to simply order you to produce it

2   -- you don't care, particularly, one way or the other, you

3   just want to comply with your obligations and I respect that

4   -- would that solve your problem?

5           MR. ERCOLINI:  I'm not entirely certain, your

6   Honor.  I would have to ask -- our counsel in Washington

7   handled most of the ITC.  They're probably more familiar

8   with the protective order, but I can get back to you with an

9   answer shortly.

10          THE COURT:  All right.

11      Mr. Godfrey, do you want to speak to that?

12          MR. GODFREY:  Please, your Honor.  I'd like to

13  address two points, your Honor.  First, it was news to us

14  that there's been a blanket consent provided by Samsung,

15  because the copies of the deposition transcripts that we

16  have, clearly have extensive testimony relating to the

17  Samsung license, redacted.  And so, Mr. Ercolini says go

18  look at the documents, but I brought copies with me and it's

19  redacted.  So perhaps if he could provide Bates numbers

20  after the hearing, or just reproduce the unredacted

21  portions, that would be helpful.

22      With regard to your second point, your Honor, about

23  where do we go from here.  One thought for how we might

24  address this would be if your Honor were to enter an order

25  for Adaptix to produce, but set that production to be for a

1 date certain, perhaps two weeks from now, and then Adaptix

2 would have time to notify the holdouts, NSN and others, to

3 the extent there are, the holdout licensees, of that

4 deadline and then if those licensees believe that the

5 existing protective order is not sufficient to safeguard

6 their confidentiality, they could come in and seek an

7 additional protective order, or raise whatever other issues

8 they may have.

9        THE COURT:  Yeah.  That thought occurred to me as

10 well, that -- and that may be the right solution.  The only

11 question I had was whether -- well, I guess the place I

12 would start would be with what the ITC protective order

13 itself says, because I just don't have enough experience

14 with that order, really any order like it from the ITC.  It

15 would seem to me that there very well could be language in

16 that order which recognizes that if a district court orders

17 production in some case, there's no violation, I'm just

18 trying to maneuver through that.

19     What I'd like you all to do on this -- I don't have a

20 live motion before me, so -- and what I do have is a

21 stipulation that I was happy to see in the first instance.

22 I'd like you to talk about whether you can get the Samsung

23 related production squared away, and any other production

24 squared away.  It may just be it's a matter of pointing to

25 the production and identifying Bates numbers.

1     I'd like you to also meet and confer on this issue of

2   the ITC protective order, and to see if that -- there's a

3   solution that I can provide, in terms of simply ordering a

4   production and overcoming the hurdle in that way.  If that's

5   not an acceptable solution to the problem, then what I would

6   suggest is perhaps Mr. Godfrey, you bringing a motion for

7   the type of order you describe where I simply command it and

8   set a date certain for production and I'll just take it up.

9   It may not -- it may be that Adaptix doesn't particularly

10  object to that, it's just everybody's trying to avoid

11  incurring the wrath of the commission, and I can appreciate

12  that.

13     All right.  So do we understand how we're going to

14  proceed, Mr. Ercolini?

15          MR. ERCOLINI:  If I may just say one thing?

16          THE COURT:  Go ahead.

17          MR. ERCOLINI:  It will probably solve an issue

18  here today, because Verizon is one of the holdouts.  AT&T is

19  also one of the holdouts to disclose their confidential

20  business information.  So if they would be willing to do

21  that here today, I think we could solve it, as far as that's

22  concerned.

23          THE COURT:  Okay.  Well, Mr. Williams, perhaps

24  that's an issue you can raise on that same phone call?

25          MR. WILLIAMS:  Yes, your Honor.

17

1       THE COURT:  And, Mr. Godfrey, I'll confess, are

2  you representing Verizon or Apple?  I always get that one

3  confused.

4       MR. GODFREY:  Verizon, your Honor.  And I'll

5  represent that we already informed Adaptix in writing that

6  Verizon consents to the production of this information.

7  It's co-defendant --

8       THE COURT:  It would be a little strange if you're

9  objecting about getting the information to yourself.  Okay.

10 All right, well why don't we see if we can work that out.

11    Mr. Ercolini?

12      MR. ERCOLINI:  Verizon has not consented to the

13 production of the material to AT&T and to HTC and I don't

14 believe that they have consented to it as to Apple.

15      THE COURT:  Okay.  Well work that out, and if you

16 can't work it out, bring a motion and I'll deal with it.

17    All right, let's move onto the next issue I have.  I

18 identified in your papers, which has to do with scheduling

19 of expert reports and disclosures.  You seem to have a

20 different opinion about what the deadlines are, and it

21 occurred to me, can we just work this out this morning

22 rather than resort to yet another motion?  Who wants to

23 speak to this?  I'm speaking specifically of footnotes one

24 and two on page six of the statement, Doctor Calyonnides.  I

25 apologize if I'm mispronouncing that name.

1         UNIDENTIFIED SPEAKER:  Calyonnides, your Honor.

2         THE COURT:  Calyonnides.  Mr. Ercolini, what's the

3    issue here?  Is it just a matter of picking a date, or

4    what's the problem?

5         MR. ERCOLINI:  Well the issue is that the last --

6    the last hearing that I believe we had on experts, your

7    Honor allowed Adaptix an extension to produce its expert

8    reports, because AT&T had objected to the use of Doctor

9    Calyonnides for a number of weeks, therefore was not able

10   to --

11        THE COURT:  I understand.  I remember that.

12        MR. ERCOLINI:  -- give us confidential business

13   information.  Verizon is taking the position, and I believe

14   Apple and HTC are both taking the position, that Doctor

15   Calyonnides report are only due on the date that you set

16   during that hearing, as to AT&T productions.  The issue is

17   that Apple's productions and HTC productions are ripe with

18   confidential business information of AT&T, which would prove

19   an obstacle for Doctor Calyonnides to view those documents.

20        We would submit that it would probably make sense to

21   just move Verizon, as well, because the same defendants that

22   are in the cases with Verizon are Apple and HTC, and

23   obviously can't view those productions.

24        THE COURT:  And what are those dates?  Can you

25   just give me a sense of the delta here?

1          MR. ERCOLINI:  So, I believe that we said that

2    they should fall due on the 7th of July for the opening

3    expert reports, or all reports which the party --

4          THE COURT:  Bears the burden of proof.

5          MR. ERCOLINI:  Bears the burden of proof.  Yes.

6    And I think that the rebuttal reports are supposed to be due

7    on August 11th.

8          THE COURT:  So again -- what you're proposing is

9    that -- I thought you just told me that there were actually

10   two deadlines, applicable to two different defendants.

11         MR. ERCOLINI:  Yes.  Two sets of defendants.  So

12   AT&T -- the way the defendants' see it is that AT&T has one

13   deadline, that's July 7th and August 22nd, and then the

14   earlier deadline would be the deadline for Apple, HTC and

15   Verizon.

16         THE COURT:  And that earlier deadline is?  I

17   apologize, can you just remind me of that again?

18         MR. ERCOLINI:  I'm actually -- I'm not certain,

19   your Honor.

20         UNIDENTIFIED SPEAKER:  June 27th, your Honor.

21         THE COURT:  Okay.  So we're talking about a

22   difference of June 27th versus July 7th as one example?

23   Okay.

24      Mr. Selwyn, go ahead.

25         MR. SELWYN:  And your Honor, at the last hearing

1  we understood you set the deadline just for AT&T's report,

2  but the defendants aren't here to quibble about a week.

3  That's fine if we want to schedule all of the reports -- all

4  of the opening expert reports for that same date.  Our only

5  request would be if we're going to move the infringement

6  reports to July 7th we'd also move the invalidity reports to

7  July 7th so that all opening reports are due the same day,

8  all rebuttal reports are due the same day.  But we have no

9  problem if they want to extend it by a week.

10          THE COURT:  Okay, well I appreciate that and it

11 strikes me just as a matter of management it would just be

12 easier to have deadline so that the people aren't confused.

13 So it sounds like then the later opening deadline -- opening

14 report deadline is going to be July 7th; am I right about

15 that?  And the later rebuttal deadline will be what?

16          MR. SELWYN:  August 11th.

17          THE COURT:  August 11th.  Okay.

18          MR. SELWYN:  So all opening reports would be due

19 July 7th, all rebuttal reports August 11th.

20          THE COURT:  Any objection to that, Mr. Ercolini?

21          MR. ERCOLINI:  No objection.

22          THE COURT:  All right.  I think we solved that

23 one.

24     Okay, the last issue I identified from your statement

25 has to do with setting a further case management conference.

1 As I understand it, we have an initial trial scheduled to

2 begin on February 9th of next year, and it strikes me as a

3 good suggestion to set a further status conference sometime

4 in the middle of September, just to see where we are and to

5 work through who's going to go first, who's going to be

6 tried together, who's going to be tried separately, all of

7 those things.

8     Mr. Rivera, can you just identify a date sometime in

9 the week of September 15th that would work for a status

10 conference?  Perhaps that Tuesday?  Or the week after if

11 that doesn't work for our schedule.

12         THE CLERK:  Tuesday, September 23rd at 10:00 a.m.

13 is available, your Honor.

14         THE COURT:  All right.  So let's plan to get back

15 together on the 23rd, and among the issues I'd like to

16 discuss, there may -- well, undoubtedly there will be others

17 between now and then, but I would like to figure out who's

18 -- how we're going to schedule these sequence of trials so

19 that everybody's calendars get set, and most importantly

20 mine, so that you don't lose the trial date that we need.

21     All right.  Are there any other -- those are the issues

22 I had.  Are there any other management issues we can address

23 this morning?

24     Mr. Godfrey.

25         MR. GODFREY:  Very briefly, your Honor.

1          THE COURT:  Sure.

2          MR. GODFREY:  I just wanted to update the Court

3    that in April Adaptix and Motorola filed a joint motion for

4    dismissal of all claims in the 1774 case, and that motion

5    has been granted.  I wanted to advise the Court that Adaptix

6    and Verizon, it's my understanding, are in agreement that

7    the remaining claims against Verizon should likewise be

8    dismissed, and we've been working together to prepare a

9    joint motion for dismissal, which we're trying to get on

10   file today.  That hasn't happened, but we expect to have it

11   filed with the Court shortly.

12         THE COURT:  Okay, I'll look for that, and assuming

13   you're in agreement, I'll probably sign it that same day.

14         MR. GODFREY:  Thank you, your Honor.

15         THE COURT:  Anything else I can help you with?

16   All right, have a good morning.  Thank you.

17      Mr. Rivera, whenever you're ready would you call the

18   next matter?

19         THE CLERK:  Calling David Trinidad(phonetic)

20   versus Reach Media Group, LLC (phonetic).  Case number CV12-

21   4759-PSG.  Matter on for status.

22      Please state your appearance.

23         MR. RICHMAN (Telephonic):  Good morning, your

24   Honor.  Ben Richman on behalf of the Plaintiff, on the

25   telephone.

1          THE COURT:   Good morning.   Is anyone else

2   appearing here?

3          MR. PANKRATZ:   Your Honor, I apologize.   It's Mr.

4   Pankratz on behalf of Blackberry.   Will you be having a

5   separate session, with respect to the later filed cases in

6   our case management conference statement?

7          THE COURT:   With apologies to the Trinidad

8   parties, I appreciate that I did not address that issue.   If

9   you all are here, candidly, let's just take care of this

10  now, rather than put things off.   And I'll confess, I didn't

11  even look to see on the related case docket what statement

12  was filed and what issues were raised.   So with that apology

13  and introduction, why don't you tell me what issues,

14  specifically, are there that you think that we need to

15  address, other than getting the schedules fixed and all of

16  that?

17         MR. PANKRATZ:   Certainly, and I think there are

18  four, and I'll try to be very brief.

19         THE COURT:   Go ahead.

20         MR. PANKRATZ:   The first --

21         THE COURT:   The seats are still warm.

22         MR. PANKRATZ:   And I don't think I'm going to be

23  addressing all of them, but I'll jump right in.   The first

24  is with respect to the parties competing requests regarding

25  what documents should be produced, and the defendants in the

24

1  Blackberry and the -- I'll call it the wave two California

2  cases, there are six of them -- are basically asking that

3  those same materials that Adaptix has agreed to produce in

4  the Apple case, that they produce those in our case as well.

5  That's what we're asking.

6       As I understand it, Adaptix has put in sort of a

7  reflective request that any defendant in these six cases

8  produce a set of materials that they've produced from the

9  earlier cases.  We're basically fine with that, but we have

10 a problem that it's going to ask for production of a lot of

11 stuff that's not relevant.  And so we'd ask that any order

12 on that front be limited to relevant materials, and I'll

13 give you two specific examples.

14      THE COURT:  Yeah, why don't you bring it into

15 focus for me.

16      MR. PANKRATZ:  The financial -- the biggest reason

17 why we ask for that is because the products are

18 fundamentally different across the cases and there is going

19 to be highly confidential information, specific to each

20 case, that we don't want a blanket order being forced to

21 produce across all of the cases.  Financial information is

22 one of the biggest ones.  If we've got -- if AT&T has

23 financial information about Apple products, that should be

24 produced in the Apple case, not the Blackberry case, and the

25 same going the other way.  Similarly, if AT&T has highly

1  confidential information about Apple's technical

2  characteristics, they should produce those in the Apple

3  case, but not the Blackberry case.  Those are the two big

4  issues we see, and it boils down to it should be materials

5  relevant to the case.

6        THE COURT:  All right.  And, is it -- is it -- I

7  may be quibbling over language, but is it an issue as much

8  about relevance as it is about confidentiality?  And I

9  realize the two are related, but is it a concern you have

10 that you don't want, for example, production to Apple of

11 stuff that's really about you and you alone?  Is that

12 basically it?  And vice versa?

13       MR. PANKRATZ:  Yes.  And really it is the

14 confidentiality that is the biggest driver of that.

15       THE COURT:  Okay.  So you would then essentially

16 ask that there be a restriction on that production.  Okay, I

17 think I understand the situation.  Let's take these up one

18 at a time and then we'll march through these.

19     Mr. Ercolini, do you want to speak to that one?

20       MR. ERCOLINI:  As to the production of AT&T

21 materials across, or --

22       THE COURT:  Yes and higher order issue of whether

23 we're talking about AT&T or Apple -- Blackberry.

24       MR. ERCOLINI:  So there -- I guess there are a

25 couple of issues.  The first thing I wanted to address is

1 the materials that were produced pursuant to the stipulation

2 in the Apple and Verizon matters.  Adaptix spent weeks

3 redacting these materials.  It's been enormously difficult

4 to do, yet it's thousands of pages you have to go through to

5 redact, based on the permissions that are granted.  What we

6 would say is that we'd hope that if we could get, you know,

7 some sort of an order whereby we'd have to produce them, or

8 if we could get an agreement from the ITC that we could

9 produce them, we're more than happy to turn these materials

10 over, but the thought of going back and redacting these

11 based on permissions that we're able to get for six other

12 defendants, is probably going to be more than we can handle.

13           THE COURT:  So it sounds like whatever solution we

14 adopt, with respect to this issue we just talked about in

15 the last matter, would effectively solve the problem here,

16 is that --

17           MR. ERCOLINI:  Yes.  Absolutely.

18           THE COURT:  All right.  So then let's deal with it

19 in that same way, however that works out.  I am -- in case

20 you haven't figured it, I'm very comfortable just issuing an

21 order, but I don't want to step on the ITC's toes, so

22 however we figure that one out, let's apply it here and I

23 think that will solve the problem.

24           MR. ERCOLINI:  Okay.  As to relevancy of the

25 documents across the cases.  Defendants have repeatedly

27

1 taken the position that all Adaptix documents, regardless of
2 the patents in suit, are relevant across all of the cases
3 and therefore must be produced across all of the cases.  We
4 think that the same should hold true for defendants.  We are
5 willing to grant defendants, to the extent that there's
6 highly sensitive confidential business information of
7 manufacturers who are not in these cases, to not be
8 produced, but we would say that everything that AT&T has
9 produced in the other cases, including the base station
10 cases, should be produced here, just for the sake of
11 efficiency.  It's going to be enormously difficult, given
12 that AT&T has different counsel in every case that they're
13 in for every manufacturer, to coordinate their productions
14 and to make sure that we can have everything we need to go
15 forward for trial.
16        THE COURT:  Well rather than having Adaptix
17 produce AT&T documents produced in another case, wouldn't
18 another way to skin this cat be to say that the burden is
19 going to be on the defendants to either -- by subpoena or
20 agreement, request those documents directly from each other?
21 And then if one defendant or another objects to giving that
22 material up, or believes it's irrelevant to the issues in
23 dispute, they can raise those objections?
24        MR. ERCOLINI:  Sure.  I think so, your Honor.
25        THE COURT:  I take it you wouldn't have a problem

1  with that?

2          MR. ERCOLINI:  No, I would not.

3          THE COURT:  Okay.  All right.  Who wants to

4  respond here?  Does that work, or would that work?  I'm just

5  trying to think of a way to --

6          MR. PANKRATZ:  I think that will work.  And we're

7  not asking for Adaptix to produce the defendant's materials.

8          THE COURT:  Okay.

9          MR. PANKRATZ:  All we're asking is -- and I think

10  he said that it's efficiency and they don't want to be

11  burdened with it, your Honor, whereas the defendant is

12  asking for that burden to be put on us to make the relevance

13  calls and be efficient in how we do that, but produce the

14  relevant materials in the relevant cases.

15          THE COURT:  Okay.  So would that -- but in terms

16  of the procedure that I've described, or at least

17  highlighted, will that work to solve that problem?  That

18  will give you, for example, an opportunity for Blackberry to

19  withhold irrelevant documents and to raise objections to

20  materials that, I don't know, Apple might want from you.

21          MR. PANKRATZ:  Yes, I think that works, your

22  Honor.

23          THE COURT:  Okay.

24          MR. PANKRATZ:  But there's one additional

25  situation, which is AT&T is a defendant across many of these

1  cases.

2           THE COURT:  They are.

3           MR. PANKRATZ:  And AT&T themselves might hold

4  confidential information that's relevant only to a

5  particular product at issue in one case.  And I think that

6  the product's distinction is important.  He made clear that

7  the defendants think all of their material is relevant, well

8  that's because all of their patents are interrelated.  The

9  products are -- they're distinct products.  And so if AT&T

10 has product information specific to a particular product

11 that's highly confidential, they shouldn't have to produce

12 that in the different cases.

13          THE COURT:  Right, but in my -- in the method I

14 described, AT&T would be able to raise that objection with

15 -- well --

16          MR. PANKRATZ:  I think that's right.

17          THE COURT:  Adaptix has the information either

18 way.  The concern is that, for example, Blackberry might get

19 information about an Apple phone and AT&T's possession has

20 nothing to do with the Adaptix case against Blackberry,

21 right?

22          MR. PANKRATZ:  Correct.

23          THE COURT:  So it seems to me that would allow

24 Apple, in that situation, to raise the objection even though

25 it's coming from AT&T.  AT&T will presumably have to provide

1  notice to Apple, as it would in any other case, right?

2          MR. PANKRATZ:  Yes.

3          THE COURT:  Okay.

4          MR. PANKRATZ:  I think that's right, your Honor.

5  I just wanted to define that.  Thank you.

6          THE COURT:  All right.  Well what other issues can

7  I help you with?

8          MR. PANKRATZ:  The second issue is regarding

9  inventor depositions, your Honor.

10         THE COURT:  Go ahead.

11         MR. PANKRATZ:  We've got six related cases in the

12 wave two and Adaptix has proposed 12 hours total for each

13 defendant across all cases -- or each inventor, rather,

14 that --

15         THE COURT:  And how many inventors -- I'm sorry --

16 are we talking about?

17         MR. PANKRATZ:  I don't know.

18         UNIDENTIFIED SPEAKER:  I believe there are four

19 inventors.

20         THE COURT:  Okay.  So 12 hours, four inventors?

21         MR. PANKRATZ:  For each --

22         THE COURT:  Or 12 hours each?

23         MR. PANKRATZ:  For each inventor.

24         THE COURT:  At least giving you that much, but you

25 don't think that's enough.

1        MR. PANKRATZ:  But across all of the cases.  So

2   seven defendants, less than two hours per defendant.

3   Blackberry will get less than two hours for each inventor.

4        THE COURT:  Assuming you get your pro rata share.

5        MR. PANKRATZ:  Assuming we -- exactly.  All we're

6   asking is that we -- if we agree to that time limit, that we

7   also be allowed to use those inventors testimony from prior

8   Adaptix cases.  It only makes sense.  It's efficient -- same

9   inventors.

10       THE COURT:  So you're good with the limits, you

11  just want to be able to use testimony from other cases in

12  your case?

13       MR. PANKRATZ:  That's correct.

14       THE COURT:  Mr. Ercolini, is there any objection

15  to that?

16       MR. ERCOLINI:  Not really, your Honor.

17       THE COURT:  All right, well I think we're done on

18  that.

19       MR. ERCOLINI:  I think it's okay.

20       THE COURT:  What's next?

21       MR. PANKRATZ:  Well I think I'm going to turn it

22  over, on this one, I think -- the third issue I'm going to

23  turnover to Mr. Godfrey.

24       THE COURT:  Okay.  Go ahead, Mr. Godfrey.

25       MR. GODFREY:  Your Honor, when we had the CMC for

1  the earlier transferred cases about a year ago, we raised

2  the issue of precluding Adaptix from redeposing Verizon and

3  AT&T employees who had been deposed in other Adaptix

4  litigations.  We seek to do the same thing here.  We ask

5  that the Court enter the same order so that Adaptix cannot

6  redepose witnesses of Verizon, AT&T and now also in these

7  cases T Mobile, another carrier, if those individuals have

8  been deposed elsewhere.  We think that because the cases

9  involve the same patents, and the infringement allegations

10 are based on the same industry standard, that it's

11 appropriate the place the burden on Adaptix to show good

12 cause before redeposing a witness, as opposed to placing the

13 burden on the carriers to come in and seek a special

14 protective order each time Adaptix notices a duplicative

15 deposition.

16          THE COURT:  And I'll confess, my vague

17 recollection -- my recollection is vague, that's the

18 confession -- my recollection is that in the earlier cases I

19 did place the burden on Adaptix to establish good cause to

20 take the additional depositions, correct?

21          MR. GODFREY:  Exactly, so --

22          THE COURT:  You're just looking for the same rule

23 again?

24          MR. GODFREY:  Exactly the same order.

25          THE COURT:  Okay.  Mr. Ercolini, how about this

33

1  one?

2          MR. ERCOLINI:  Actually, I'm not entirely certain

3  that's the case, your Honor.

4          THE COURT:  Okay.  Tell me where you think I got

5  it wrong.

6          MR. ERCOLINI:  I think that the -- I think that

7  the proposal is that we don't get to take any depositions in

8  these cases of Verizon and AT&T.

9          THE COURT:  Well I'm not about to impose that kind

10  of restriction.  What I hear Verizon proposing, along with

11  others, is a good cause requirement that if you can show me

12  that you need to go take that same person again, I'll give

13  it to you.  But absent that good cause, we're not going to

14  have the same person deposed multiple times.  Is that

15  unreasonable?  Forget about what they think.  What do you

16  think and what do I think?

17          MR. ERCOLINI:  I think that this -- these cases

18  involve entirely different manufacturers.  We haven't taken

19  any discovery.  These cases were filed two years after those

20  cases.  Adaptix has already agreed to consolidate its

21  depositions across -- ND Cal and Texas cases, which was a

22  pretty big concession.  I think that we clearly have no

23  intention of wasting the Court's time, wasting the

24  defendants' time or their employees, but requiring us to

25  seek good cause every time we need to depose someone, where

34

1  we haven't even taken any discovery, I think is probably

2  abridge too far.  You have my word that we would absolutely

3  not take advantage of the situation and we would not depose

4  anyone unnecessarily.

5          THE COURT:  Well I'm hesitant to articulate the

6  good cause standard, because then you're going to come at me

7  with a bunch of case law every time we have a fight about

8  this.  I don't begrudge you that part, but what I'm trying

9  to say is I see no reason to let this issue go unaddressed

10  and then confront it in 20 different fights down the road.

11  I am convinced that as a default, there should not be a

12  further deposition of a witness and that transcript should

13  be used -- usable I should say -- in these later cases.  But

14  if you can't work it out, and I strongly urge you to work

15  out, I will hear a request, and when I say "good cause" or

16  "overcoming the presumption" I'm going to apply the liberal

17  standard.  So if you can show me some delta, Mr. Ercolini,

18  I'll grant you, but I'm going to put the burden on you to

19  show me that delta after you've met and conferred with the

20  other side.  Okay.

21          MR. ERCOLINI:  Thank you.

22          THE COURT:  All right, what's next?

23          MR. GODFREY:  Finally, the issue, your Honor,

24  relates to experts.

25          THE COURT:  Go ahead.

35

1        MR. GODFREY:  Adaptix has asked that if a

2  defendant -- well, basically what defendants are asking for

3  is that if an expert serves an expert report on one of the

4  defendants, the defendants get to take that experts

5  deposition.  Adaptix is saying that if, for example, AT&T

6  had an expert report by one of these guys in a previous

7  case, they shouldn't get to depose them again in the current

8  cases.

9        THE COURT:  Okay, let me see if I can catch up to

10  you on this one.  So these are expert reports that are

11  tendered by Adaptix?

12        MR. GODFREY:  Yes, your Honor.

13        THE COURT:  So these are Adaptix expert --

14        MR. GODFREY:  Adaptix expert reports on

15  infringement and validity.

16        THE COURT:  Okay and what you're saying is, if

17  they've got an expert, we'll call her Ms. -- Doctor Jones,

18  and she opines on infringement by T Mobile, you want the

19  right to depose Doctor Jones, even though she has no

20  opinions at all about Blackberry?

21        MR. GODFREY:  No, your Honor, that's not it.

22        THE COURT:  So tell me where I've got it wrong.

23        MR. GODFREY:  If Doctor Jones -- if AT&T is in a

24  base station case, and Doctor Jones issues a report on the

25  infringement by AT&T in that case, and then later now in the

1   Blackberry case Doctor Jones issues a report and she says

2   AT&T infringes based on Blackberry products, AT&T should be

3   allowed to depose that expert in the Blackberry case.

4            THE COURT:  Okay.

5            MR. GODFREY:  Just because Doctor Jones submitted

6   an infringement report a year ago in an unrelated case, AT&T

7   should not be prohibited from deposing that expert in the

8   case in which the expert submits a new infringement report.

9            THE COURT:  Okay.  That sounds rather

10  uncontroversial, so --

11           MR. GODFREY:  It does, and that's maybe --

12           THE COURT:  -- let me turn to Mr. Ercolini and

13  ask, Mr. Ercolini, what's the objection with that?  If the

14  scenario we're talking about here is an expert report in a

15  case against defendant number one, why wouldn't defendant

16  number one be allowed to take that deposition?

17           MR. ERCOLINI:  We're just trying to avoid

18  duplicative depositions.  I mean the expert's time -- expert

19  hours are fairly limited and we're just hoping not to have

20  to do this over and over and over again.  AT&T has -- will

21  have deposed these expert witnesses on the same patents in

22  suit over and over and over again.

23           THE COURT:  But we're talking about a separate

24  case, right?  And a separate product, right?

25           MR. ERCOLINI:  Yes, your Honor.

37

1          THE COURT:  Okay.  So I'm going to allow that
2  deposition to be taken if you want to, but I see no reason
3  to restrict that.
4          MR. GODFREY:  Thank you, your Honor.
5          THE COURT:  All right.  Are there any other --
6  anything else?
7          MR. ERCOLINI:  Yes, your Honor.
8          THE COURT:  Mr. Ercolini, go ahead.
9          MR. ERCOLINI:  Adaptix would like the same
10  limitation on Adaptix's witnesses that Verizon is seeking on
11  its own witnesses, and especially with regard to the parties
12  who are defendants in the other cases in Texas.  They will
13  have deposed these witnesses, by the time we probably get to
14  these depositions, three or four times, using the same
15  counsel for the same party.  We're saying, for now, to the
16  extent that they are -- they are parties in the other
17  actions and they share counsel with co-defendants in those
18  actions, that they should cooperate to avoid redundant
19  depositions.  Meaning that, in particular, AT&T is a party
20  to several actions in the eastern district of Texas.  One of
21  those is a case -- set of cases involving base stations.
22  AT&T will depose the inventor of those base stations, but it
23  will also depose several other witnesses who are former
24  Adaptix employees.  Baker Botts is counsel for AT&T in those
25  cases.  Baker Botts is also counsel for T Mobile and AT&T in

38

1 these cases, as well as Blackberry.  We're just hoping to

2 avoid having to produce these witnesses three or four times

3 over, because it's already looking that way.

4          THE COURT:  Can I ask you, Mr. Ercolini, without

5 holding you to a precise number, give me a rough sense of

6 how many witnesses we're talking about that are going to be

7 implicated by this.  Two, ten, 100?

8          MR. ERCOLINI:  Up to ten, maybe 12.

9          THE COURT:  In that range.

10          MR. ERCOLINI:  Yes.

11          THE COURT:  All right.  Do you want to respond?

12          MR. PANKRATZ:  I will, your Honor.  And I'll

13 admit, I'm relatively new to this case, compared to a lot my

14 patriots here.

15          THE COURT:  Me too, but go ahead.

16          MR. PANKRATZ:  But I am at Baker Botts and I do

17 have partners and colleagues who have been working on this

18 case for quite awhile.  I represent Blackberry.  We're new

19 to this case.  It sounds, from what he's saying, that

20 because I'm at Baker Botts I should somehow be prevented

21 from coming in on Blackberry's behalf and taking depositions

22 of Adaptix witnesses.  That, to me, makes no sense and it's

23 completely unfair.

24          THE COURT:  Well the firm -- the firm exclusion

25 makes little sense to me.  But what I hear is a slightly

1  different point from Mr. Ercolini, which is if the party has

2  participated in a deposition of these individuals before,

3  unless you can show the same good cause -- or meet that same

4  standard, there's no reason to have to do this again and

5  again, right?

6         MR. PANKRATZ:  I think so, but I'm not sure that

7  makes practical sense here.  Because, again, it's different

8  products at issue.  So there are fundamentally different

9  issues going on.  We're not going to be spamming these guys

10 with deposition requests, and to the extent we do depose

11 these folks, it's going to be coordinated.  We've got

12 limits, right?  We can't just go after the same guy over and

13 over again, and the defendants will be forced to split that

14 time up across the days.  So to say that I couldn't -- one

15 of these attorneys couldn't put on an AT&T hat and ask a

16 couple questions, I just don't think make sense.  The

17 federal rules are going to limit, and the rules that -- the

18 limits on hours that we've put in are going to limit how

19 much time we can spend with these folks.  There shouldn't be

20 a limit on which attorney from the defense group gets to ask

21 the questions.

22        THE COURT:  Okay.  Well I suspect --

23        MR. KUBEHL:  Your Honor?

24        THE COURT:  Yes.  Go ahead, is that -- who's

25 speaking?

1          MR. KUBEHL:  Hello, your Honor.  Doug Kubehl.

2          THE COURT:  Mr. Kubehl, go ahead.

3          MR. KUBEHL:  I represent T Mobile here today.  I

4   just want to make a couple of points.  One of the witnesses

5   that we're talking about is Doctor Liu, who is the chief

6   technical advisor for Adaptix.  In the base station case,

7   we've got his deposition scheduled.  The base station case

8   involves five patents that are not at issue in this case.

9   So T Mobile, Ericcson and AT&T will be taking Doctor Liu's

10  deposition on the week of June 16th, just before the close

11  of discovery in this case, on issues relating to those five

12  patents that are at issue in that case, and what Adaptix has

13  proposed is that T Mobile and AT&T should be made to take a

14  deposition of him on the two patents at issue in this case -

15  - two different patents -- in a case where we've not

16  represented any company on these patents before, and we

17  don't have document productions in the cases.  That's one

18  example of just sort of if -- it would be strange for us to

19  come and have to show a good cause to take Doctor Liu's

20  deposition in this case, regarding two different patents.

21  What we're trying to avoid here is some sort of a blanket

22  rule where we have to come and show good cause, even in a

23  situation like that.

24          The second point I'd make is, what Adaptix is trying to

25  do also is, they want to avoid duplicative testimony, and

41

1 we're all for that, but at the same time, they don't want us

2 to be able to use any of the transcripts from the other

3 cases.  So these third party witnesses, for example, former

4 employees depositions that have been taken, to the extent we

5 can reuse that testimony in these cases, we're very happy

6 not to burden those third parties with additional

7 depositions, but if Adaptix is going to take the position

8 that those are inadmissible in this case because they

9 weren't taken in this case, well then we'd have no choice

10 but to take those again.

11     So what we'd rather do in situations like that is if

12 it's a third party where everybody has had a fair

13 opportunity to ask their questions, to the extent we can

14 reuse those transcripts, we'll try to do that.  If there's

15 some good cause to have to go in, we can deal with it at

16 that point.  But there ought to be reuse of transcripts in

17 this case, at least.  And that's the incongruity that we're

18 seeing here that they want to limit ability to take

19 depositions and at the same time prevent us from using

20 former testimony.

21           THE COURT:  Let me speak to you to those issues.

22 On the first issue, again, I don't think it's a high bar,

23 but I do think it's only fair that I apply that same

24 standard and framework on both sides, so -- and there's an

25 intermediate step here that I'm hoping will take care of

1   99.6-percent of the issues, which is, you're to meet and

2   confer before you bring a motion to the Court, and with the

3   guidance I've given you here this morning, I hope you

4   understand that if we're talking about different patents,

5   different products, a delta that's measurable and

6   identifiable, I'm going to grant the motion and if I have to

7   deal with the motion when it's so clear, I'm not going to be

8   particularly thrilled about that and I won't hesitate to

9   shift fees and do all of the other fun things that courts

10  get to do.

11      As to the second issue, let me ask Mr. Ercolini, are

12  you objecting to the reuse of third party transcripts?

13           MR. ERCOLINI:  No.  I thought that we had already

14  -- we had already --

15           THE COURT:  So no more again, Mr. Ercolini.  I

16  appreciate your apathy and succinct resolution of that

17  issue.

18      All right so I think we've addressed that one.  Are

19  there any other final issues we can address?  Okay --

20           MR. BLOCH:  Your Honor?

21           THE COURT:  Mr. Bloch, go ahead.

22           MR. BLOCH:  And I'll be brief, but the situation

23  with Dell is slightly different.  Dell is not a party to any

24  of the prior cases and its damages in this case, as we've

25  indicated in our little separate section, are very very

43

modest.  I mean this is a tiny little case that ought to

just, frankly, go away.  There's a dispute over whether the

plaintiff is going to produce its damages computations.  As

to Dell, that's the whole case, and it's really simple, and

we all know from the other cases, which Dell is not a party

to, but we understand what's going on, we had Motorola, we

all know what the calculations are supposed to be.  We all

know that they're computing damages on a per unit basis.

There's really no reason not to produce that number,

especially as to Dell, when the numbers are so small.  Once

that number is established, this is the case that, as to

Dell, should simply disappear.  Dell, of course, having had

nothing to do with the other cases, we're looking at a

totally clean slate for discovery, so the cost to Adaptix

are much worse than for everybody else.  So we would just

ask again, as we did in our papers, let's get that damages

computation.  There's no need to worry about attorney's fees

or any of that.  You're certainly not claiming attorney's

fees against Dell in this case.

        THE COURT:  Well what would you have, Mr. Bloch,

an early damages report served that commits to a number at

this point?

        MR. BLOCH:  That would be great.

        THE COURT:  I'm sure it would be, but how -- I

mean realistically what you're asking for -- I mean this is

44

1  the initial case management conference.  We've all been

2  trying to figure out how to do damages discovery in a saner

3  way.  Give me some specifics here.  What would you -- are

4  you prepared to produce a damages report of your own?

5          MR. BLOCH:  Yes.  Absolutely.

6          THE COURT:  Within 30 days?

7          MR. BLOCH:  Willingly.  You know, we're talking

8  about numbers in the three to four to five figure range, at

9  the very outside.  The number of products sold by Dell that

10 are accused here is under 10,000.

11         THE COURT:  Units?

12         MR. BLOCH:  Units.  That's right.  And if we're

13 talking pennies per unit, or maybe under 100,000 -- but it's

14 pennies per unit.  We're talking about a number that should

15 be between 3,000 and 30,000, if prior calculations hold.  So

16 it seems to be as to Dell, we should think about a

17 streamline way to get that issue taken care of, and at that

18 point nobody is going to trial over $22,000.  It's

19 irrational.

20         THE COURT:  Well perhaps an alternative to this

21 might be an early mediation.  Isn't that the solution here?

22 Rather than putting all of you to the expense of producing

23 -- even the simplest -- I know the damages experts -- even

24 the simplest report is going to cost you more than that,

25 right?

1          MR. BLOCH:  We would consider a separate track for

2 Dell on something like that.

3          THE COURT:  What do you think, Mr. Ercolini?

4          MR. ERCOLINI:  I don't think we'd have an issue

5 with that.

6          THE COURT:  Okay.  I think that's the solution

7 here.  I mean through the mediation, I think we can secure

8 the information in order to get to a resolution.  I'll leave

9 it to you all to workout the details, but if it's useful, my

10 guidance here is I want you to try to figure out either a

11 private mediator, or one of our panel members, or even a

12 magistrate judge, if necessary.  And let's get that

13 scheduled quickly.

14          MR. BLOCH:  That sounds great, your Honor.  Thanks

15 very much.

16          THE COURT:  All right.  Let's handle it that way.

17      Any other issues?  All right.  Now I think we've

18 covered it.  Have a good morning.

19      (Proceedings adjourned at 10:44 a.m.)

20

21

22

23

24

25

46

## CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16              Echo Reporting, Inc., Transcriber

17                   Tuesday, June 3, 2014

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*