UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, Inc.,<br><br>            Plaintiff,<br><br>v.<br><br>APPLE, INC., *et al.*,<br><br>            Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Hearing Date: November 4, 2014<br>Time: 1:00 p.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC, *et al.*,<br><br>            Defendants. | Case No.  5:13-cv-01778-PSG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Hearing Date: November 4, 2014<br>Time: 1:00 p.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>APPLE INC., *et al.*,<br><br>            Defendants. | Case No. 5:13-cv-02023-PSG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Hearing Date:  November 4, 2014<br>Time: 1:00 p.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |

**DEFENDANTS AT&T, APPLE, AND HTC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT:  NO "SELECTING A SET OF CANDIDATE SUBCARRIERS"**

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | There is no claim construction dispute. | 2 |
| III. | There is no genuine factual dispute that would preclude summary judgment. | 3 |
| IV. | No reasonable jury could find that the act of "providing feedback" on all subbands—each and every time—constitutes "selecting." | 4 |
| V. | Adaptix conflates the separate claim limitations "selecting" and "providing feedback." | 5 |
| | A. The asserted claims and patent specification describe "selecting" and "providing feedback" as separate actions. | 5 |
| | B. Adaptix mischaracterizes the embodiments disclosed in the specification. | 6 |
| | C. ████████████ does not and cannot constitute "the subscriber selecting a set of candidate subcarriers." | 7 |
| | D. Adaptix cannot reconcile its theory that ████ infringes with its admission that Mode 1 does not infringe. | 9 |
| VI. | The Court should not reconsider its order striking Adaptix's untimely ████ theory. | 10 |
| VII. | Conclusion | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ramsey Grp., Inc. v. EGS Int'l, Inc.*,
    329 F. Supp. 2d 630 (W.D.N.C. 2004) ............................................................................................. 8

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003) ........................................................................................................ 8

**STATUTES**

Civil L.R. 7-9. ......................................................................................................................................... 10

## I. INTRODUCTION

Adaptix's opposition fails to raise any genuine issue of material fact that precludes summary judgment of noninfringement.[1]

*There is no claim construction dispute*.  As Defendants acknowledged at the *Markman* hearing, the limitation "selecting a set of candidate subcarriers" can be met by choosing a portion of or all of the subcarriers, as the set of candidate subcarriers.  To "choose" all subcarriers, however, there must be an option to choose less than all.  Otherwise there is no choice.  Adaptix's opposition seeks to render the parties' agreed-upon construction of the term "selecting" (construed to be "choosing") meaningless by arguing that a subscriber unit that lacks choices nevertheless meets the asserted claims.   Adaptix is reading the "selecting" element out of the claim.

*There is no dispute over those aspects of the accused products' operations relevant to this motion*.  The parties do not dispute that in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The only dispute, which the Court should decide as a matter of law, is whether a subscriber unit that has no option but to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, nevertheless, meets the "selecting" limitation.  Because the accused subscriber units have no choices, no reasonable jury could find that the accused subscriber devices perform the step of "selecting a set of candidate subcarriers."

In arguing that the accused subscriber devices "select" all subcarriers simply by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Adaptix improperly conflates the steps of "the subscriber *selecting* a set of candidate subcarriers" and "the subscriber *providing feedback* information on the set of candidate subcarriers" in the asserted claims.  While the specification includes examples of providing feedback

---

[1] Defendants have filed two separate reply briefs: one for the cases involving AT&T and one for the cases involving Verizon.  These briefs are largely identical, but the reply brief in the Verizon cases responds to a unique argument regarding Dr. Andrews made only in Adaptix's opposition brief for the Verizon cases.

- 1 -

information for all subcarriers, in each of those examples, the subscriber first has performed the independent step of selecting the set of candidate subcarriers and, crucially, has the option to select fewer than all subcarriers. But the asserted patents never disclose a subscriber that is required to select every subcarrier every time.

The relevant issue, therefore, is whether the accused subscriber devices perform some action—besides the separately claimed step of providing feedback—that constitutes making the choice that all subcarriers will be in the "set of candidate subcarriers." Adaptix and its expert, Dr. Caloyannides, failed to identify any such action. Indeed, as Dr. Caloyannides conceded at deposition: "█████████████████████████████████████████████████████████████████████████████████████████████." Ex. 18, 9/13/14 Caloyannides Tr. at 23:3-5 (emphasis added). Consequently, the Court should grant summary judgment of non-infringement.

## II. THERE IS NO CLAIM CONSTRUCTION DISPUTE.

There is no disagreement over the proper construction of the term "selecting a set of candidate subcarriers," and the Defendants are not asking the Court to change its construction. To begin, the parties agree that the term "selecting" means "choosing," and this construction was adopted by the Court. C.A. -1778, D.I. 147 at 2; C.A. -1778, D.I. 160 at 2. The parties also agree that the asserted claims cover methods where, among other things, the subscriber unit can choose all of the subcarriers as the "set of candidate subcarriers." Contrary to Adaptix's assertion, however, Defendants are not attempting to read out a preferred embodiment of the patents-in-suit, where the subscriber chooses all subcarriers to be within the set of candidates, and then reports on all subcarriers. *See* C.A. -1778, Opp. Br. D.I. 338 at 5. Nor are Defendants seeking to limit the claims to cover only methods where the subscriber unit chooses a "subset" of subcarriers as the "set of candidate subcarriers." Indeed, at the *Markman* hearing, Defendants specifically acknowledged that the claims cover methods where the chosen "set of candidate subcarriers" could be either all or a portion of the subcarriers:

| | |
|---|---|
|1| A set could constitute **all the subcarriers**. A set could also constitute a **portion of the subcarriers**. We don't think there's any reason to introduce this concept of subset into the construction.|

(C.A. -1778, D.I. 307-18 (Ex. 17 to Opening Motion) Markman. Tr. at 30:23-31:15 (emphasis added); *see also id.* at 22:11-18. Therefore, there is no claim construction dispute, nor any reason to revisit the Court's claim construction.

Adaptix attempts to fabricate a claim construction issue by arguing that "[t]he specification discloses [an] alternative embodiment[ where] the device is programmed to select as candidates "all" of the subcarriers." Opp. Br. at 1. That is incorrect. The specification does not disclose any embodiment where the subscriber provides feedback information for all subcarriers without an option of choosing fewer than all of those subcarriers. Instead, consistent with the claims, every embodiment describes that the subscriber unit makes measurements on the subcarriers and then performs an evaluation on those measurements to determine which subcarriers will be selected. *See, e.g.*, '748 patent at 3:7-19; 5:37-55; 7:49-57; 8:15-18; 8:55-65; 9:27-40; 9:41-42; 9:57-64; 10:19-22; 10:31-41; 12:3-5; 15:55-56. Consistent with the claims, and all of these embodiments, the subscriber may select all or just a portion of the subcarriers as candidates. There is always a choice to be made by the subscriber.

### III. THERE IS NO GENUINE FACTUAL DISPUTE THAT WOULD PRECLUDE SUMMARY JUDGMENT.

The parties do not dispute the relevant operations of the accused products or the scope of Adaptix's infringement theories. First, only ▓▓▓▓ is accused of infringement. Second, it is undisputed that the use of Mode 1 does not infringe. Third, there is no dispute that an accused device ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Adaptix's sole infringement argument is that, because the accused subscriber devices ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- 3 -

██████████ as the "set of candidate subcarriers."  Adaptix's infringement expert admitted at deposition that he has no other infringement theory:

> Q. And I understand that your infringement theory for this claim element is that the accused UE devices perform the step of selecting a set of candidate subcarriers by ██████████.  Is that correct?
>
> A. That is correct.
>
> Q. And your theory is that ██████████.  Is that correct?
>
> A. That is correct. . . .
>
> [Q.] It is not your theory that the ██████████?
>
> A. No. ██████████.
>
> Q. In each and every time?
>
> A. That is correct.

Ex. 18, 9/13/2014 Caloyannides Tr. at 9:18-10:18.  Adaptix's expert expressly disavowed the theory that only certain (fewer than all) subbands are candidates.[2]  *Id*.

## IV. NO REASONABLE JURY COULD FIND THAT THE ACT OF "PROVIDING FEEDBACK" ON ALL SUBBANDS—EACH AND EVERY TIME—CONSTITUTES "SELECTING."

As explained above, Defendants do not dispute that a subscriber that affirmatively ***chooses*** all of the subcarriers can satisfy the claim limitation "selecting a set of candidate subcarriers."  But to "choose," there must be options from which to choose.  Under the 3GPP LTE standard, a subscriber device operating in ██████████ ██████████ without selecting any as candidates.  By contrast, LTE's ████

---

[2] Nonetheless, Adaptix's counsel seems to still embrace the stricken theory as viable.  As discussed below, Adaptix argues that it should be allowed to "reassert the backup theory" of infringement that the Court previously struck from Dr. Caloyannides' infringement report.  (*See* Opp. Br. at 9 ("Adaptix (and its expert) should be given the opportunity to reassert the backup theory articulated earlier this year.").)

███████████████████) permits the subscriber device to "select" specific subbands on which to report. (C.A. -1778, D.I. 307-12 (Ex. 11 to Opening Motion) at § 7.2.1.)

Adaptix mischaracterizes Defendants' position by suggesting that "Defendants argue that because they have ████████████████████████████████████████████████████████████████ ████████████████████████████████████████" (Opp. Br. at 5.) Defendants argue no such thing.  As noted, under the 3GPP LTE standard, ████████████████████████ ████████████████████████████████ The absence of choice is not the same as "choosing all."

## V. ADAPTIX CONFLATES THE SEPARATE CLAIM LIMITATIONS "SELECTING" AND "PROVIDING FEEDBACK."

### A. The asserted claims and patent specification describe "selecting" and "providing feedback" as separate actions.

The patents make clear that "selecting" and "providing feedback" are different steps.  For example, among other limitations, claim 8 of the '748 Patent requires both:

- "the subscriber selecting a set of candidate subcarriers"; and

- "the subscriber providing feedback information on the set of candidate subcarriers to the base station."[3]

Adaptix mischaracterizes Defendants' position, stating "[T]he device *reports* on a set of candidate subcarriers. ████████████████████████████████████████████████ ████. . ." (Opp. Br. at 7 (internal citations removed).)  Defendants do not agree that providing feedback constitutes selecting.  Those are distinct actions and separately claimed limitations; the claim language separately requires the subscriber to perform the steps of "selecting" and "providing feedback."  ('748 patent at 17:65-18:3 (claim 8).)  During claim construction, Adaptix acknowledged that "selecting" and "providing feedback" are separate steps.  (*See* C.A -1778, Dkt. 150, Opening Claim Construction Brief at 8 ("[T]he subscriber 'chooses' a set of candidate subcarriers.  The

---

[3] The other asserted independent claim, claim 1 of the '212 patent, contains the same steps, though it recites "subscriber unit" in lieu of "subscriber."

- 5 -

subscriber then provides feedback by ordering the subcarriers as clusters. . . . Thus, it is clear that the "choosing" in the claims involves the earlier selection of candidate subcarriers [by the subscriber], not the later feedback on candidate clusters.").)  And the Court properly construed "selecting" to mean "choosing," not "providing feedback on."

Adaptix's infringement expert Dr. Caloyannides similarly conceded in deposition that (1) "selecting" and "providing feedback" are different steps, and (2) providing feedback by sending CQI values does not amount to "selecting" a set of candidate subcarriers.  (C.A. -1778, D.I. 306-15 (Ex. 16 to Opening Motion), 9/12/14 Caloyannides Tr. at 344:14-15 ("A. Selection is totally separate from measurement and from sending."); *id* at 345:10-11 ("A. Neither the measurement nor the sending amounts to selecting.").)

**B.     Adaptix mischaracterizes the embodiments disclosed in the specification.**

Adaptix improperly conflates the separate "selecting" and "providing feedback" limitations, and effectively reads the "selecting" limitation out of the claims.  For instance, Adaptix mischaracterizes the patent's disclosure regarding providing feedback as disclosure regarding selecting.  (*See* Opp. Br. at 6.)  In doing so, Adaptix relies on several embodiments concerning feedback on "clusters" of subcarriers, even though the asserted claims do not recite a subscriber unit selecting or providing feedback on "clusters."  (*See, e.g.*, Opp. Br. at 6 (citing '748 patent at 5:53-55, 7:54-58, and 8:63-65).)  Adaptix's reliance on these cited portions of the specification only serves to confirm that the acts of "selecting" and "providing feedback" are in fact separate and independent steps.

For instance, Adaptix quotes the portion of a specification that states "[i]n one embodiment, each subscriber measures the SINR *of each subcarrier cluster* and reports these SINR measurements to their base station through an access channel."  (*See* Opp. Br. at 6 (emphasis in original) (citing '748 patent at 5:53-55).)  But the immediately prior sentence shows that a selection of preferred clusters has

- 6 -

already occurred: "The selection results in each subscriber *selecting clusters* they would prefer to use based on the measured parameters." ('748 patent at 5:50-52 (emphasis added).)  In context, these passages refute Adaptix's contention that the patents disclose an embodiment where the subscriber must select all subcarriers every time.[4]

Finally, nowhere does the specification disclose "*selecting* as many subbands as possible, and preferably *selecting* all," as Adaptix contends. (Opp. Br. at 5.)  Adaptix's only support for this statement is paragraph 23 of Dr. Caloyannides' declaration, which says nothing about the patent specification, and only describes ▮▮▮▮ reporting generally.

### C.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not and cannot constitute "the subscriber selecting a set of candidate subcarriers."

Neither Adaptix nor its expert identifies any action performed by the accused devices that constitutes a "selection."  In his report and in his deposition, Adaptix's expert identified an action allegedly corresponding to the claimed "measuring" step and an action allegedly corresponding to the claim step of "providing feedback."  (C.A. -1778, D.I. 306-15 (Ex. 16 to Opening Motion) 9/12/14 Caloyannides Tr. at 343:11-19.)  But he did not identify any action that constituted a "selection" of subcarriers, and he conceded that "[n]either the measurement nor the sending [of feedback] amounts to selecting." (*Id.* at 345:10-11.)

When asked whether the accused devices perform the required selection, Adaptix's expert Dr. Caloyannides testified that he was not familiar with the source code and therefore could not identify any action that constitutes the claimed selection. (*See id*. at 344:22-15 ("Q. Can you give me any information at all as to what the UE does, what action it takes, to perform that selection that is not

---

[4] Similarly, Adaptix takes a portion of a sentence from the specification out of context stating, "[i]n one embodiment, the SINR on *each cluster* is reported to the base station, through an access channel." (Opp. Br. at 6 quoting '748 patent at 8:63-65 (Adaptix's emphasis).) But the preceding text (not discussed by Adaptix) describes, consistent with the rest of the patent, that measurements are taken ('748 Patent at 8:48-54) and that the subscriber unit makes a reasoned selection. *Id*. at 8:55-59.

- 7 -

1  measurement and that is not sending the report?  A. Oh, I'm not familiar with the software in the UE to

2  tell you that.").)  When asked a similar question during a separate deposition, Dr. Caloyannides went

3  on to concede: ████████████████████████████████████████████

4  ████████████████████████████████████████."  (Ex. 18, 9/13/14 Caloyannides Tr. at

5  23:3-5 (emphasis added).)

6

7        Faced with these indisputable facts, Adaptix has now provided a new declaration from Dr.

8  Caloyannides that offers *for the first time* the conclusory assertion that the accused devices "satisfy the

9  'selecting' step when ████████████████████████████████████████"

10  (Caloyannides Decl. at ¶25 (cited in Opp. Br at 8).)  Dr. Caloyannides' unsupported opinion was not

11  disclosed in Dr. Caloyannides's expert report and contradicts his sworn deposition testimony that (*inter*

12  *alia*) he is "not familiar with the software in the UE to" "give any information at all as to what the UE

13  does, what action it takes, to perform that selection that is not measurement and that is not sending the

14  report."  (C.A. -1778, D.I. 306-15 (Ex. 16 to Opening Motion) 9/12/14 Caloyannides Tr. at 344:22-

15  345:2.)  "A party may not submit affidavits purporting to create genuine issues of fact if the affidavits

16  contradict prior sworn testimony."  *Ramsey Grp., Inc. v. EGS Int'l, Inc.*, 329 F. Supp. 2d 630, 638

17  (W.D.N.C. 2004) (citing *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298

18  (Fed. Cir. 2003)).  For at least these reasons, the Court should disregard Caloyannides' late

19  declaration.[5]  *See id*. ("Where an expert's declaration contradicts previous sworn testimony, it is proper

20  for the Court to strike or refuse to consider the same.").

---

[5] Paragraph 25 of Dr. Caloyannides' declaration states: "accused devices satisfy the 'selecting' step when ████████████████████████████████████████."  This opinion was not disclosed in Adaptix's infringement contentions or in Dr. Caloyannides's expert report.  Nor did Dr. Caloyannides disclose this opinion during any of his numerous depositions.  Tellingly, Dr. Caloyannides' declaration claims "CQI values" are selected, but offers no explanation of what would constitute the "set of candidate subcarriers" present in the step of "the subscriber selecting a set of candidate subcarriers."  Dr. Caloyannides' new and conclusory opinion should be disregarded by the Court.

- 8 -

Regardless, even Dr. Caloyannides' belated declaration illustrates that the accused devices do not perform the "selecting" limitation (as distinguished from the "measuring" and "providing feedback" steps). That is, "███████████████████████████████████████████" (Caloyannides Decl. at ¶25) is nothing more than "measuring" channel quality and "providing feedback," two steps that Caloyannides concedes are *not* selecting. (C.A. -1778, D.I. 306-15 (Ex. 16 to Opening Motion), 9/12/14 Caloyannides Tr. at 345:10-11 ("A. Neither the measurement nor the sending amounts to selecting.").) Adaptix's infringement contentions confirm as much. (*See*, *e.g*., Ex. 19, Infringement Contentions for '212 Patent, Adaptix v. HTC, at 7 ("The Accused Products measure these reference signals to derive channel and interference information. . . . This helps the Accused Products determine signal-to-interference-plus-noise ratios ("SINRs"), which are reported as a CQI values.").)

### D. Adaptix cannot reconcile its theory that ███ infringes with its admission that ███ does not infringe.

Adaptix's infringement theory for ███ is inconsistent with its admission that ███ does not infringe. ███████████████████████████████████████████████████████, as Adaptix contends (e.g., Opp. Br. at 7), then ███ would infringe, because in ███████████████ █████████████████████████████████████ (C.A. -1778, D.I. 307-12 (Ex. 11 to Opening Motion) at §7.2.2.) But Adaptix concedes that ███ does not infringe. (Opp. Br. at 4.) Adaptix's admission that the accused devices operating in ███ do not select a set of candidate subcarriers (i.e., do not "█████" subcarriers) applies with equal force to Adaptix's theory regarding Mode 3. In ████████████████████████████████████████████████████ ████████████

- 9 -

1  **VI. THE COURT SHOULD NOT RECONSIDER ITS ORDER STRIKING ADAPTIX'S UNTIMELY ▮▮▮ THEORY.**

Adaptix requests that the Court reconsider its prior Order granting Defendants' motion to strike new infringement theories (in order to allow Adaptix to reassert its untimely "selecting some" theory of infringement) in the event that the Court narrows its claim construction. Adaptix's request should be denied for three reasons. ***First***, Adaptix's justification for reconsideration does not apply because Defendants are not seeking to modify the Court's claim construction (*see* Sec. II above). ***Second***, it would make even less sense now to allow Adaptix to assert its "selecting some" theory, because Adaptix's expert Dr. Caloyannides expressly disavowed that theory during his deposition. *See, e.g., supra*, Sec. III (block quoting Ex. 18, 2014-09-13 Caloyannides Tr. at 9:18-10:18 ("[Q.] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮")). ***Third***, Adaptix fails to comply with Civil L.R. 7-9 and does not even attempt to show the "exercise of reasonable diligence," the emergence of new facts or law, or the "manifest failure" of the Court to consider Adaptix's original positions. Civ. L.R. 7-9. Therefore, there is no reason for the Court to reconsider its Order on Defendants' motion to strike. (C.A. 5:13-cv-1778, D.I. 267.)

**VII. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment of non-infringement of all asserted claims of the '748 and '212 patents.

Dated: October 31, 2014                    By: */s/ Fred I. Williams*

Fred I. Williams (*Admitted pro hac vice*)
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, TX 78701

- 10 -

Telephone: (512) 499-6200
Facsimile:  (512) 499-6290

Michael F. Reeder, II (*Admitted pro hac vice*)
mreeder@akingump.com
James L. Duncan, III (*Admitted pro hac vice*)
jduncan@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana St., 44th Floor
Houston, TX 77002
Telephone: (713) 220-5800
Facsimile:  (713) 236-0822

Danielle C. Crockett (SBN 252961)
dcrockett@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile:  (415) 765-9510

*Attorneys for Defendants*
*AT&T Mobility LLC, HTC Corporation,*
*and HTC America, Inc.*


*/s/ Christopher A. Hughes*
Christopher A. Hughes (admitted *pro hac vice*)
Christopher.Hughes@cwt.com
John T. Moehringer (admitted *pro hac vice*)
John.Moehringer@cwt.com
Regina M. Lutz (admitted *pro hac vice*)
Regina.Lutz@cwt.com
CADWALADER WICKERSHAM
  & TAFT L.L.P.
1 World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

David Clonts (admitted *pro hac vice*)
dclonts@akingump.com
AKIN GUMP STRAUSS HAUER
  & FELD LLP
1111 Louisiana Street, 44th floor
Houston, TX 77002
Telephone: (713) 220-5886
Facsimile: (713) 236-0822

Douglas M. Kubehl (admitted *pro hac vice*)
doug.kubehl@bakerbotts.com
Kurt M. Pankratz (admitted *pro hac vice*)
kurt.pankratz@bakerbotts.com

- 11 -

Jonathan B. Rubenstein (admitted *pro hac vice*)
jonathan.rubenstein@bakerbotts.com
James C. Williams (admitted *pro hac vice*)
james.williams@bakerbotts.com
Johnson Kuncheria (admitted *pro hac vice*)
johnson.kuncheria@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Bryant C. Boren, Jr.
bryant.c.boren@bakerbotts.com
Jon V. Swenson
jon.swenson@bakerbotts.com
Gina A. Bibby
gina.bibby@bakerbotts.com
BAKER BOTTS L.L.P
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

Jennifer C. Tempesta (admitted *pro hac vice*)
jennifer.tempesta@bakerbotts.com
BAKER BOTTS L.L.P
30 Rockefeller Plaza
45th Floor
New York, NY 10112
Telephone: (212) 408-2571
Facsimile: (212) 259-2571

*Attorneys for Defendant*
*AT&T Mobility LLC*


  /s/ Mark D. Selwyn
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
Craig E. Davis (SBN 221356)
craig.davis@wilmerhale.com
Andrew L. Liao (SBN 271219)
andrew.liao@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Jonathan L. Hardt (admitted *pro hac vice*)
jonathan.hardt@wilmerhale.com

1
2
3
4

WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

5

*Attorneys for Defendant and
Counterclaim-Plaintiff Apple Inc.*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION OF E-FILED SIGNATURE**

Pursuant to Civil Local Rule 5-1(i)(3), the attorneys signing above for defendants Apple Inc., AT&T Mobility LLC, and HTC Corporation, HTC America, Inc. attest that they have each obtained the concurrence of the other defendants for purposes of filing these papers on behalf of the respective parties in coordinated Case Nos. 5:13-cv-1777, 5:13-cv-1778, and 5:13-cv-02023.